Henry Clay Greenberg, J.
This is an application for judicial approval of the formation of an incorporated political club, a proceeding which is governed by the provisions of section 10 of the Membership Corporations Law. In the ordinary situation a certificate of a membership corporation requires only the approval of a justice of the Supreme Court. But, “If the name of the proposed corporation includes the name of a political party, the consent of the chairman of the county committee of such political party of the county in which the office of the corporation is to be located, shall be endorsed on such certificate, except in cases where the supreme court finds that the withholding of such consent of the county chairman is unreasonable.”
As the name of the proposed corporation is Metropolitan Republican Club, Inc., and its office is to be located in New York County, the certificate was submitted by the incorporators to the chairman of the Republican County Committee of the County of New York for the purpose of having his consent indorsed thereon. Upon his refusal they applied to this court to determine that his withholding of consent was unreasonable and that the certificate be approved, as provided in the statute.
The incorporators of the proposed club consist of a number of “Independent Eisenhower Republicans ” led by John A. Roosevelt, who alleges that they are registered Republicans and intend to appeal through their proposed corporation to “ individuals interested in government as contrasted with party organization and politics ” and believes “ that any overt connection with or control by the party organization in the form of the county committee or its chairman would put the incorporators and their fellow workers at a serious disadvantage in attempting to attract independent Eisenhower supporters into the ranks of the Republican Party.”
Parenthetically, of the 11 proposed incorporators, four do not live in the borough of Manhattan and, in fact, not even in the greater city; two others did not register from the city address given; and another is a new voter, having voted in Oyster Bay prior to 1956. The other four proposed incorporators are New York County voters, representing approximately 36% of the number of proposed incorporators of a membership organization which, it is said, is to function in the county of New York.
*207 Since I regard as not unreasonable the withholding by the county chairman of his consent based upon the ground of danger of confusion to the public arising from the application in its present form, it is unnecessary to pass upon the factual grounds of objection also raised by him.
The primary purpose, as I conceive it, of the statutory requirement for consent is to permit objection by the representative of the party directly affected when it is sought to appropriate the party name for use by a proposed corporation not identified or in any way connected with the party organization — and perhaps antagonistic to some of its policies or candidates— but necessarily creating such impression of identification among the electorate by the use of the party name. A reading of section 10 in its entirety indicates the legislative concern to avoid confusion arising from the proposed use of a name in a corporation which has been associated in thé minds of the public with other persons or organizations.
Our political system is built around party organization. Almost simultaneously with the birth of the American nation came the birth of political parties. When our forefathers were framing the Federal Constitution, the possibility of party government and party control was known. Political parties are the natural product of evolution in the process of popular government. They are not merely the wisest and most practical way in which the operations of popular government can be carried on, but they furnish the only way to conduct the affairs of government so far as we can judge from the experience of the world up to the present time.
Parties are formed without reference to the law but as a result of the inherent differences in men. The minds of some men are suggestive, creative and resourceful in expedients and bent toward the accomplishment of some purpose and, therefore, whenever these individuals want one set of measures carried out and another group prefers another, each will organize itself in order to give effect and utterance to its views. Thus we have the nucleus of political parties.
Political parties must function through an organization, and that organization is usually reflected in the channels of the county committee. The county organization is a political institution consisting of all the registered voters of the party in the county represented by a county committee whom they elect under the provisions of the Election Law and whose power as the ‘ ‘ regular party organization ’ ’ is thus conferred upon them by virtue of such election. The county committee and its *208 chairman are, in a sense, trustees of party interests for the registered voters of the party in that county.
If the avowed purpose of the proposed incorporators is to foster the principles of the Republican party, then that end can be accomplished through the party machinery which has already been set up. On the other hand, if the avowed purpose is only the ostensible and not the real purpose, or if its aim is to destroy the party machinery or its leadership, it may accomplish this result through other media. It may not properly expect or demand, through the guise of this membership corporation, that the chairman sign a warrant for his and the organization’s destruction. In such circumstances the county chairman would be well justified in withholding his approval.
The party name, if it belongs to anyone, belongs to the voters enrolled under it. A name is a symbol or a means of identification. A voter would naturally assume that a club bearing" the name of his party without any distinguishing words was an integral part, adjunct or affiliate, or, at the very least, a supporter of the regular party organization. Any voter intending to join that party or register under it, would have a like impression. The danger of confusion is further evident from the stated purpose of the proposed corporation, “ to teach, advocate and promote the principles of the Republican Party,” which, obviously, is also the purpose of the regular party organizations.
In the absence of any distinguishing features in the name and purposes of the proposed corporation, the conclusion appears to me, inescapable that there is danger that persons fully intending to support the regular party organization may be led to join the proposed club or pay heed to its admonitions under false auspices and be thereby ultimately diverted from their true intentions into opposing the policies or candidates of the organization. If independence of the regular party organization is the goal, that must be made manifest for all to see; otherwise, a deception may be practiced upon the public (see Owasco Club v. Kantor, 171 Misc. 960; Gerlach v. Good Govt. Republican Club, 123 N. Y. S. 2d 902).
By this decision no attempt is made to put a stop to the free communication of men’s thoughts upon government. It is given adequate currency either through other and independent channels or through the party machinery which is already in existence. The court goes no further than to say that the proposed incorporators may not arrogate to themselves the party machinery in this subtle and veiled fashion.
Accordingly, the motion is denied.